ARMSTRONG CORK & INSULATION COMPANY, a Corporation, *Appellant,* vs. J. GROMAN; SERVICE ICE COMPANY, a Corporation; FLORIDA CONTRACTING & ENGINEERING COMPANY, a Corporation; FLORIDA CONCRETE BUILDING TILE COMPANY, a Corporation; CURETON LUMBER COMPANY, a Corporation; WALLER CONSTRUCTION & SUPPLY COMPANY, a Corporation; ROBBINS ROOFING WORKS, a Corporation; F. M. ALLEN, Agent, *Appellees.*

554

141 So. 754.
Division B.
Opinion filed May 24, 1932.

*Herbert U. Feibelman,* for Appellant;

*H. H. Taylor, W. Beardsley* and *Fred J. Cohn,* for Appellees.

PER CURIAM.—Florida Contracting & Engineering Company made a contract with Service Ice Company, of which J. Groman was an officer and manager, to construct an ice plant in Miami, Florida, on lands belonging to Service Ice Company. Armstrong Cork & Insulation Company, appellant, made a contract with Florida Contracting & Engineering Company to furnish and install cork insulation for said ice plant. In February, 1926, Florida Contracting & Engineering Company was discharged from its contract and Service Ice Company undertook the completion of the ice plant. In April, 1926, Armstrong Cork & Insulation Company filed its notice of lien as provided in Section 3517 et seq. Revised General Statutes of 1920 (Section 5380 et seq. Compiled General Laws of 1927) for the purpose of subjecting an alleged unpaid balance due Florida Contracting & Engineering Company by Service Ice Company to the payment of its (Armstrong Cork &

Insulation Company) claim against Florida Contracting & Engineering Company for installing cork insulation.

This suit was brought by Armstrong Cork & Insulation Company under section 3519 Revised General Statutes of 1920 (Section 5382 Compiled General Laws of 1927) to foreclose its said lien and to recover its claim of $7200 with interest. Service Ice Company filed its answer to the bill to foreclose resisting the claim of Armstrong Cork & Insulation Company on the ground that the cost of completing the ice plant was greatly in excess of the amount due by it to Florida Contracting & Engineering Company when it (Service Ice Company) took over the contract to complete the ice plant. At the final hearing, the special master found the amount of the contract for constructing the ice plant to be $56,419.00, $44,867.77 of which was paid to the contractor, that there was a balance due on the contract of $11,551.23 when the contractor was discharged, and that after taking over the contract, Service Ice Company expended $13,890.47 in its completion. The master found further that items amounting to $5,693.60 expended by Service Ice Company in completing the ice plant were not contemplated in the original contract therefor and should not be allowed as charges against the claim of Florida Contracting & Engineering Company. He deducted the sum of the expenditure for the items he adjudged not contemplated in the original contract from the amount due the contractor and found the difference or amount still due it to be $4,400.88, which amount was subject to the lien and claim of Armstrong Cork & Insulation Company. The Chancellor sustained exceptions to the master's finding and dismissed the bill of complaint at the cost of complainant. From that decree this appeal is prosecuted.

The sole and ultimate question brought here for our determination is whether or not, at the time Florida Contracting & Engineering Company was discharged from its con-

tract to complete the ice plant for Service Ice Company there was due it anything on said contract that was subject to the payment of the lien of Armstrong Cork & Insulation Company. The answer to this question involves an interpretation of the general contract and the evidence as applied to the items expended by Service Ice Company in the completion of the ice plant which the master held were not contemplated by the general contract but which the Chancellor held were contemplated and should be allowed.

The first item deducted by the master was $1600 paid J. Groman for superintending the completion of the ice plant. We think the master was correct as to this item. The record discloses that no such item was contemplated in the general contract, that Groman at the time was receiving $5200 per annum as superintendent of the Service Ice Company which had employed a Mr. Howison, formerly an employee of the contractor, to take charge of and complete the ice plant.

The second item deducted by the master was $1426 paid for cork insulation for an additional freezing tank. The contract and specifications made a part of the record seem to show conclusively that this item was not included in the bids on the general contract. We reach a like conclusion as to the following items deducted by the master: $350 for building garage; $120 for elevation of toilet floor; $270 for false ceiling in storage room; $600 for drilling well; $130 for additional plumbing; $100 for tank foundation; $140 for excavating and building tank wall; $118 for wire fence; $3 for pump packing; $75 for attorney's fees.

The item of $550 paid W. E. Davidson as salary was properly deducted by the master because Davidson appears to have been employed to superintend the installation of machinery and otherwise look after construction. The contract required the owner to furnish this service.

The item of $11 for septic tank is carried in the specifica-

tions and was therefore contemplated in the general contract. The contract nor the evidence seem clear on the item of $200 for building line sewer. In this situation, the ruling of the Chancellor is upheld as to this item.

It follows that as to the last two enumerated items, the final decree of the Chancellor is affirmed. In all other respects it is reversed.

Affirmed in part, reversed in part.

WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J., concur.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in the opinion and judgment.